BENJAMIN B. WAGNER
United States Attorney
JILL M. THOMAS
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

FILED
DEC 1 2015
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

FRANK LOBATOS,

Defendant.

CASE NO. 2:14-cr-0206 JAM

PLEA AGREEMENT

December 1, 2015
Honorable John A. Mendez

## I. INTRODUCTION

### A. Scope of Agreement

The Indictment in this case charges the defendant Frank Lobatos ("defendant") in Count One with Conspiracy to Possess With Intent to Distribute and to Distribute Oxycodone, in violation of Title 21, United States Code Sections 846 and 841(a)(1). The superseding information charges the defendant with Laundering of Monetary Instruments, in violation of 18, United States Code Section 1956. This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

### B. Court Not a Party

The Court is not a party to this plea agreement. Sentencing is a matter solely within the

discretion of the Court, and the Court may take into consideration any and all facts and circumstances concerning the criminal activities of defendant, including activities that may not have been charged in the Information. The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this plea agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will receive.

## II. <u>DEFENDANT'S OBLIGATIONS</u>

### A. <u>Guilty Plea</u>

The defendant will plead guilty to the sole count in the superseding information, charging him with Laundering Monetary Instruments, in violation of Title 18, United States Code Section 1956(a)(1)(B)(i). The defendant agrees that he is in fact guilty of these charges and that the facts set forth in the Factual Basis For Plea attached hereto as Exhibit A are accurate.

The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case. The defendant understands and agrees that he will not be allowed to withdraw plea should the Court not follow the government's sentencing recommendations.

The defendant agrees that the statements made by him in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this Agreement. The defendant waives any rights under Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, to the extent that these rules are inconsistent with this paragraph or with this Agreement generally.

The defendant acknowledges that the crime to which he is pleading guilty is listed in 18 U.S.C. § 3143(a)(2), and agrees that he will be remanded into custody upon the entry of plea.

**B. Fine**

The defendant agrees to pay a fine as ordered by the Court.

**C. Special Assessment**

The defendant agrees to pay a special assessment of $100 at the time of sentencing by delivering a check or money order payable to the United States District Court immediately before the sentencing hearing. If the defendant is unable to pay the special assessment at the time of sentencing, he agrees to earn the money to pay the assessment, if necessary by participating in the Inmate Financial Responsibility Program.

**D. Defendant's Violation of Plea Agreement or Withdrawal of Plea**

If the defendant, violates this plea agreement in any way, withdraws his plea, or tries to withdraw his plea, this plea agreement is voidable at the option of the government. The government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein. One way a defendant violates the plea agreement is to commit any crime or provide any statement or testimony which proves to be knowingly false, misleading, or materially incomplete. Any post-plea conduct by a defendant constituting obstruction of justice will also be a violation of the agreement. The determination whether the defendant has violated the plea agreement shall be decided under a probable cause standard.

If the defendant violates the plea agreement, withdraws his plea, or tries to withdraw his plea, the government shall have the right: (1) to prosecute the defendant on any of the counts to which he pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement. The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge, including perjury, false statements, and obstruction of justice. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses that the defendant might have to the government's decision to exercise the options stated in the previous paragraph. Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph,

notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions. The defendant agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as of the date of this plea agreement.

In addition: (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

**E. Defendant's Sentencing Recommendation**

The defendant is free to argue for any deviance or variance from the Sentencing Guidelines under United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005), and to recommend to the Court whatever sentence he believes is appropriate under 18 U.S.C. § 3553(a). The United States may oppose any argument for a variance under § 3553(a).

## III. THE GOVERNMENT'S OBLIGATIONS

**A. Dismissals**

The government agrees to move, at the time of sentencing, to dismiss without prejudice the count in the pending Indictment. The government also agrees not to reinstate any dismissed count except if this agreement is voided as set forth herein, or as provided in II.D (Defendant's Violation of Plea Agreement), VI.B (Guidelines Calculations), and VII.B (Waiver of Appeal) herein.

**B. Recommendations**

1. Incarceration Range

The government will recommend that the defendant be sentenced to no more than 24 months in prison.

2. Acceptance of Responsibility

The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of defendant's offense level if he clearly demonstrates acceptance of responsibility for his conduct as defined in U.S.S.G. § 3E1.1. This includes the defendant meeting with and assisting the probation officer in the preparation of the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

**C. Use of Information for Sentencing**

The government is free to provide full and accurate information to the Court and the United States Probation Office ("Probation"), including answering any inquiries made by the Court and/or Probation, and rebutting any inaccurate statements or arguments by the defendant, his attorney, Probation, or the Court. The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

## IV. ELEMENTS OF THE OFFENSE

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offenses to which the defendant is pleading guilty, that is Laundering Monetary Instruments, in violation of Title 18, United States Code Section 1956(a)(1)(B)(1):

1. The defendant conducted a financial transaction, that is, he withdrew money from his bank account in Sacramento, California;
2. The defendant knew that the property involved in such a financial transaction represents the proceeds of some form of unlawful activity;
3. The proceeds involved a specified unlawful activity, that is, illegal drug distribution;
4. The defendant deposited the money into his bank account while acting with the knowledge that the transaction was designed in whole or part to disguise the nature, location, source, ownership, or control of the proceeds of the specified unlawful activity.

A "financial transaction" is a transaction involving the movement of funds by wire or other means that affects interstate or foreign commerce in any way.

The defendant fully understands the nature and elements of the crime charged in the superseding information to which he is pleading guilty, together with the possible defenses thereto, and has discussed them with his attorney.

## V. MAXIMUM SENTENCE

### A. Maximum penalties

The maximum sentence that the Court can impose for sole count in the superseding information is 20 years of incarceration, a fine of $ 500,000 or twice the value of the monetary instruments or funds involved in the offense, whichever is greater, a period of supervised release of not more than 5 years and a special assessment of $100.

### B. Violations of Supervised Release

The defendant understands that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to three additional years of imprisonment on the sole count of the superseding information.

## VI. SENTENCING DETERMINATION

### A. Statutory Authority

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after

consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

**B. <u>Guideline Calculations</u>**

The government and the defendant agree that the following is their present best estimate of the sentencing guidelines variables. These estimates shall not be binding on the Court, the Probation Office, or the parties:

1. <u>Base Offense Level</u>: **8**

The parties agree that the funds were derived from a drug trafficking offense that the defendant aided and abetted, and thus is accountable under U.S.S.G. § 2S1.1(a)(1). Therefore, under U.S.S.G. § 2S1.1(a)(2), the base offense level is 8 levels plus the numbers of levels under § 2B1.1 corresponding to the value of laundered funds. In this case, the parties agree that the amount of laundered funds was approximately $15,500. Under the current version of the Guidelines this results in 4 levels. U.S.S.G. § 2B1.1(b)(1)(F). Accordingly, the parties estimate that the base level is 12.

2. <u>Distribution of a Controlled Substance</u>: **+6**

A six-level increase applies because the proceeds involved the distribution of a controlled substance. U.S.S.G. § 2S1.1(b)(1)(i).

3. <u>Conviction under § 1956</u>: **+2**

Another two-level increase applies because the conviction arises under 18 U.S.C. § 1956. U.S.S.G. § 2S1.1(b)(2)(B).

4. <u>Adjusted Offense Level</u>: **20**

5. <u>Acceptance of Responsibility</u>: **-3**

*See* paragraph III.B.2. above.

6. <u>Final Adjusted Offense Level</u>: **17**

**C. <u>Criminal History</u>:**

The parties do not have any estimates or any agreements as to defendant's criminal history. The defendant is permitted to object or otherwise challenge any criminal history calculations determined by the Probation Officer, and he reserves the right to argue that his criminal history category substantially

over-represents the seriousness of his criminal history under U.S.S.G. § 4A1.3(b). The United States is permitted to argue in support of any criminal history calculations by the Probation Officer.

## VII. WAIVERS

### A. Waiver of Constitutional Rights

The defendant understands that by pleading guilty he is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to subpoena witnesses to testify on his behalf; (e) to confront and cross-examine witnesses against him; and (f) not to be compelled to incriminate himself.

### B. Waiver of Appeal and Collateral Attack

The defendant understands that the law gives the defendant a right to appeal his guilty plea, conviction, and sentence. The defendant agrees as part of his plea, however, to give up the right to appeal the guilty plea, conviction, and the sentence imposed in this case as long as the sentence does not exceed the statutory maximum. The defendant specifically gives up the right to appeal any order of restitution the Court may impose.

Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the statutory maximum; and/or (2) the government appeals the sentence in the case. The defendant understands that these circumstances occur infrequently and that in almost all cases this Agreement constitutes a complete waiver of all appellate rights.

In addition, regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

Notwithstanding the agreement in paragraph III.A (Dismissals) above that the government will move to dismiss counts against the defendant, if the defendant ever attempts to vacate his plea, dismiss the underlying charges, or modify or set aside sentence on any of the counts to which he is pleading guilty, the government shall have the rights set forth in paragraph II.D (Defendant's Violation of Plea Agreement) herein.

### C. Waiver of Attorneys' Fees and Costs

The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this plea agreement and any charges previously dismissed).

## VIII. ENTIRE PLEA AGREEMENT

Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

## IX. APPROVALS AND SIGNATURES

### A. Defense Counsel

I have read this plea agreement and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

Dated: 11/28/15

CHRIS COSCA, ESQ.
Counsel for Defendant

### B. Defendant

I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this plea agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

Dated: 11/28/15

FRANK LOBATOS, Defendant

### C. Attorney for the United States

I accept and agree to this plea agreement on behalf of the government.

Dated: 12/1/15

BENJAMIN B. WAGNER
United States Attorney

By:

JILL M. THOMAS
Assistant United States Attorney

**EXHIBIT "A"**
**Factual Basis for Plea**

If this matter proceeded to trial, the United States would establish the following facts beyond a reasonable doubt:

Beginning in approximately January 2014, a co-conspirator in Boise, Idaho engaged in illegal drug trafficking, including distribution and sales of oxycodone. According to records obtained from U.S. Bank, defendant Frank Lobatos opened an individual student checking account, account number, 157502915265, on January 25, 2014 at the Cordova Village Safeway branch in Rancho Cordova, California. Cash proceeds from the co-conspirator's drug trafficking were often deposited directly into personal bank accounts, including Frank Lobatos's account noted above. Corresponding bank information corroborate the deposits into Lobatos's bank account.

Lobatos's co-conspirator deposited the illegal cash proceeds from drug trafficking into Lobatos's U.S. Bank account while the co-conspirator was in Boise, Idaho. These cash deposits were made in Boise, Idaho; Lobatos's account and Lobatos were based in Rancho Cordova, California. After the deposits were made in Boise, Lobatos conducted a financial transaction by withdrawing the money in smaller amounts than the deposits, and on separate occasions approximately one week apart, to disguise the source and nature of the proceeds. After he withdrew the money in different Sacramento area banks, Lobatos delivered the cash as directed to his co-conspirator. Lobatos made $100 on each transaction. Lobatos knew that the money was from drug trafficking by his co-conspirator so the deposits and withdrawals from different banks were designed to conceal the source and control of the proceeds of the specified unlawful activity. Lobatos was the only named person on the account to which these funds were deposited and withdrawn.

Specifically, between January 1, 2014 and March 6, 2014, deposits totaling $15,500 were made into Lobatos's bank account as follows in the corresponding table:

| Transaction Date | Post Date | Transaction Amount | Cash In - Deposit | Cash Out - Withdrawal | Branch Location |
|---|---|---|---|---|---|
| 01/27/2014 | 01/27/2014 | 3,500.00 | 3,500.00 | | 7100 West State St, Boise, ID |
| 01/27/2014 | 01/27/2014 | 500.00 | | 500.00 | Folsom Blvd, Rancho Cordova, CA |
| 01/27/2014 | 01/28/2014 | 2,500.00 | | 2,500.00 | 10635 Folsom Blvd, Rancho Cordova, CA |
| 01/29/2014 | 01/29/2014 | 500.00 | | 500.00 | Folsom Blvd, Rancho Cordova, CA |
| 02/01/2014 | 02/03/2014 | 3,250.00 | 3,250.00 | | 3614 West State St, Boise, ID |
| 02/03/2014 | 02/03/2014 | 503.00 | | 503.00 | Gold River, Rancho Cordova, CA |
| 02/04/2014 | 02/04/2014 | 2,000.00 | | 2,000.00 | 2264 Fair Oaks Blvd, Sacramento, CA |
| 02/06/2014 | 02/06/2014 | 500.00 | | 500.00 | Fair Oaks, CA |
| 02/11/2014 | 02/11/2014 | 2,200.00 | 2,200.00 | | 10500 Overland Rd, Boise, ID |
| 02/12/2014 | 02/12/2014 | 2,200.00 | | 2,200.00 | 10635 Folsom Blvd, Rancho Cordova, CA |
| 02/19/2014 | 02/19/2014 | 3,500.00 | 3,500.00 | | 1000 Broadway Ave, Boise, ID |
| 02/20/2014 | 02/20/2014 | 20.00 | | 20.00 | Zinfandel, Rancho Cordova, CA |
| 02/20/2014 | 02/20/2014 | 480.00 | | 480.00 | Zinfandel, Rancho Cordova, CA |

| Transaction Date | Post Date | Transaction Amount | Cash In - Deposit | Cash Out - Withdrawal | Branch Location |
|---|---|---|---|---|---|
| 02/20/2014 | 02/20/2014 | 500.00 | | 500.00 | Fair Oaks, CA |
| 02/20/2014 | 02/20/2014 | 2,400.00 | | 2,400.00 | 5450 Dewey Dr, Fair Oaks, CA |
| 03/04/2014 | 03/04/2014 | 3,050.00 | 3,050.00 | | 3614 West State St, Boise, ID |
| 03/05/2014 | 03/05/2014 | 2,500.00 | | 2,500.00 | 3217 Zinfandel Dr, Rancho Cordova, CA |
| 03/06/2014 | 03/06/2014 | 500.00 | | 500.00 | Folsom Blvd, Rancho Cordova, CA |
| 03/06/2014 | 03/06/2014 | 200.00 | | 200.00 | 10635 Folsom Blvd, Rancho Cordova, CA |
| | | | **$ 15,500** | **$ 15,303** | |

In addition, the cash deposits, with Lobatos's knowledge, were split by the out-of-state depositor into amounts less than $10,000 over the course of approximately six weeks in an effort to ensure banks would not file currency transaction reports on the deposits. Lobatos also knew they were proceeds from specified unlawful activity, that is, illegal distribution of oxycodone by his co-conspirator in Boise, Idaho. As shown by Lobatos's U.S. Bank records, the deposits were no greater than $3,500 and the withdrawals were no more than $2,500. Lobatos withdrew cash on the separate occasions outlined in the table above between January 1, 2014 and March 6, 2014 totaling approximately $15,500 and delivered the cash to his co-conspirator.

I have reviewed the entire factual basis in Exhibit A above, or have had it translated to me, and, as far as my own conduct is concerned, I adopt it as my own true statement.

Dated: ______________________ ______________________________

FRANK LOBATOS, Defendant